IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GENERAL STAR NATIONAL INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 2973 |
| | ) | |
| ADAMS VALUATION CORPORATION, | ) | |
| DOUGLAS ADAMS, AND KENNETH CONNER, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Kenneth Conner worked for Mutual Bank of Harvey ("Mutual Bank") from August 2000 until October 2007. In 2011, Conner filed a *qui tam* action against a number of Mutual Bank officials, the bank's appraisal firm, Adams Value Corporation ("AVC"), and AVC's president, Douglas Adams ("Adams"). *United States ex rel. Conner v. Veluchamy*, No. 11 C 4458 (N.D. Ill. filed June 30, 2011). Conner's suit alleges that AVC, Mutual Bank, and the individual defendants collectively engaged in a scheme to defraud the Federal Deposit Insurance Corporation ("FDIC") by overstating the value of properties that secured loans made by the bank, thereby reducing the bank's liability for deposit insurance assessments. AVC tendered defense of the case to its insurer, General Star National Insurance Company ("General Star").

In the instant case, Plaintiff General Star seeks a declaration that it has no duty to defend AVC or Adams, because the acts alleged by Conner are not covered by the insurance policy issued by General Star to AVC. Arguing that the alleged conduct potentially falls within the policy, Conner moves to dismiss General Star's complaint for failure to state a claim [17]. In a separate motion, the Adams Defendants seek dismissal on the basis that General Star failed to join necessary parties, including the bank officials sued by Conner in the underlying action. General Star, for its part, seeks judgment on the pleadings. For the reasons discussed below, with respect to the individuals that the Adams Defendants suggest are necessary parties, those

individuals' interests are too insubstantial to justify dismissal of the case. The court concludes, further, that the conduct alleged by Conner in the underlying suit (*i.e.*, that AVC knowingly participated in a scheme to mislead the FDIC) does not fall within the provisions of the insurance policy in dispute. Thus, General Star has no duty to defend, and its motion for judgment on the pleadings is granted.

## **FACTUAL BACKGROUND**

Defendant Conner worked for Mutual Bank (and a predecessor entity) from August 2000 until October 2007. He was assigned to the bank's Harvey, Illinois headquarters from fall 2005 until the conclusion of his employment. During his tenure, Conner was responsible for reviewing the appraisals of properties that secured commercial real estate loans. (*Qui tam* complaint, Ex. B to Pl.'s Am. Compl. [5], ¶ 1.) Conner filed the underlying action pursuant to the False Claims Act ("FCA"), which is designed to prevent fraud against the federal government. The basic concept of *qui tam* suits under the FCA is that a private citizen with personal knowledge of such fraudulent activity may bring a suit on behalf of the government in return for a share of the proceeds, should the suit prevail. *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1016 (7th Cir. 1999). In his underlying action, Conner seeks to recoup damages from certain former Mutual Bank employees and directors, AVC, and Adams. (*Qui tam* complaint, Ex. B to Pl.'s Am. Compl., ¶ 1) During his time at the bank's headquarters, Conner allege, he repeatedly notified Mutual Bank that it grossly overvalued the collateral on commercial real estate loans based on falsely inflated appraisals provided by AVC. (Id.) In response to these communications, Conner claims, Mutual Bank Officials instructed him to "ignore the issue." (Id. ¶ 27.) Also, when Conner questioned whether Pethinaidu Veluchamy, owner of Mutual Bank and the Chairman of the Board, knew there were valuation problems with the appraisals, another board member allegedly replied, "Yes, do you think he is an idiot?" (Id. ¶ 61.) Based upon these false appraisals, Conner alleges, Mutual Bank was able to secure

favorable commercial loans for real estate properties and "reduce deposit insurance premiums due to the FDIC and otherwise conceal risk." (Id. ¶ 1.)

Conner claims that the conduct of Mutual Bank officials and AVC constitutes a violation of Section 3729 of the FCA. To establish civil liability under the FCA, one must generally prove (1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false. 31 U.S.C. § 3729(a)(1). Conner alleges that the defendants in the underlying suit violated the FCA by submitting to the FDIC appraisals that they knew to be inflated and, as a result, the bank decreased its obligation to pay deposit insurance to the federal agency. (*Qui tam* complaint, Ex. B to Pl.'s Am. Compl., ¶¶ 94–96.)

While Conner's False Claims Act case proceeded, General Star commenced this action, seeking a declaratory judgment that it has no duty to defend AVC in the underlying suit under the terms of Real Estate Errors & Omissions Liability Insurance Policy No. NJA985501F ("Insurance Policy"), which General Star issued to AVC. (Pl.'s Am. Compl. ¶ 36.) The Insurance Policy requires General Star to "pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages for Claims during the Policy period . . . arising out of any act, error, omission or Personal Injury in the rendering or failure to render Professional Services . . . ." (Insurance Policy, Ex. A to Pl.'s Am. Compl., at 3.) Claims are defined as "a demand for money [or] the filing of a Suit . . . naming the Insured and alleging an act, error, omission or Personal Injury resulting from rendering or failure to render Professional Services." (Id. at 8.) Professional Services constitute "services performed by an Insured in an Insured's capacity as a broker, buyer's broker, agent, appraiser of real estate, a real estate consultant, auctioneer, counselor or property manager, as long as such service is rendered for a fee, commission, or other compensation . . . ." (Id. at 10.) General Star has "the right and duty to defend any Suit against the Insured seeking Damages to which [the] insurance

applies," but has "no duty to defend the Insured against any Suit seeking Damages to which the insurance does not apply."  (Id. at 3.)

General Star argues that the Insurance Policy does not provide coverage to AVC, because the underlying FCA suit does not arise from professional services rendered by AVC, but, instead, from the representation of false information to the FDIC.  (Pl.'s Am. Compl. ¶ 29.)  Defendants respond that AVC's alleged actions of preparing inflated appraisals to Mutual Bank triggered General Star's duty to defend under the Insurance Policy, because such actions resulted from the professional services on which the underlying FCA suit is based.  (Defs.' Resp. to Pl.'s Mot. for J. on the Pleadings [31], at 4–6.)

## **DISCUSSION**

Three motions are before the court: (1) Defendants Adams and AVC have moved to dismiss for General Star's failure to join necessary parties; (2) Defendant Conner separately moves to dismiss for failure to state a claim[1]; and (3) General Star seeks judgment on the pleadings.  The court will address the issue of necessary parties before turning to the substantive motions.

**I.      Motion to Dismiss for Failure to Join Necessary Parties**

Defendants contend that General Star's complaint for declaratory judgment must be dismissed for failure to join necessary parties.  Whether a party is necessary in the Rule 19 sense requires a two-step inquiry.[2]  First, the court must determine whether the party in question

---

[1]     The standard for a Rule 12(b)(6) motion is the same as that for a motion under Rule 12(c).  *Guise v. BWM Mortg., LLC*, 377 F.3d 795, 798 (7th Cir. 2004).  And, in response to General Star's motion for judgment on the pleadings, Conner has directed the court to his own Rule 12(b)(6) arguments.   (*See* Def. Conner's Resp. to Pl.'s Motion for Judgment on the Pleadings [34], hereinafter "Def. Conner's Resp.," at 1.)  Accordingly, this court construes Conner's motion as a response to Plaintiff's 12(c) motion.

[2]     Under Rule 19(a)(1), a party must be joined if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the
(continued . . .)

is a necessary party. *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001) (citing *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999)). To make this decision, the court considers whether full relief can be granted in the party's absence, whether the party's ability to protect its interest will be adversely affected, and whether the existing parties will be subjected to a substantial risk of multiple or inconsistent obligations in the party's absence. *Id*. If the court decides the party in question is a necessary party but that it cannot be joined in the lawsuit, the court then turns to Rule 19(b) to determine whether the litigation can continue in the party's absence. *Id.*; FED. R. CIV. P. 19(b).

Both Adams and AVC contend that the Mutual Bank defendants in the underlying FCA action are necessary parties in this case, as well. Specifically, the Adams Defendants urge that the other fourteen defendants in the underlying *qui tam* suit have an interest in the current action because those defendants have "a potential cross-claim for contribution or other relief against [AVC]" for any FCA liability they might incur. (Defs.' Mot. to Dismiss for Failure to Join Necessary Parties [21], hereinafter "Defs.' Mot. to Dismiss," at 3.) "As a result," the Adams Defendants urge, "those parties have an interest in this action and therefore should be present in this action to protect their interests." (*Id.* at 6–7.)

The court disagrees. The Mutual Bank officials deemed "necessary" by Defendants in this case are not parties to the Insurance Policy in dispute and have no interest in that policy. The term "complete relief" in Rule 19 refers to "relief between the persons already parties, and not as between a party and the absent person whose joinder is sought." *Davis Cos.*, 268 F.3d at 484 (quoting *Perrian v. O'Grady*, 958 F.2d 192, 196 (7th Cir. 1992)). As AVC and Adams hypothesize, the Mutual Bank defendants may well seek recovery against AVC and may, therefore, have a *financial* interest in the proceeds of the Insurance Policy, but they have no

---

interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. FED. R. CIV. P. 19(a)(1).

*legal* interest that will be impeded by the judgment in this case. *See Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503 (7th Cir. 1980) ("potential indemnitors have never been considered indispensable parties, or even parties whose joinder is required if feasible"); *see also* 4-19 Moore's Federal Practice §§ 19.03 ("[Rule 19] specifically requires that the potential harm threaten an absentee's interest relating to the subject of the action. This interest must be legally protected, not merely a financial interest or interest of convenience.") (internal quotations omitted), 19.06 ("joinder of potential indemnitors is not required. . . [i]n cases of contribution and indemnity, the defendant simply does not need to rely on compulsory party joinder, because the defendant instead has the much more expedient remedy of impleader"). Adams's and AVC's motion to dismiss for failure to join necessary parties is denied.

## II. Motion for Judgment on the Pleadings

General Star has also moved for judgment on the pleadings. Defendants object to the motion on two grounds: (1) they argue that Plaintiff's 12(c) motion is premature, as the pleadings are not closed; and (2) they also contend that, on the merits, General Star is not entitled to judgment on the pleadings. The court will address these objections in turn.

### A. Timeliness of General Star's 12(c) Motion

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings have closed." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Defendants here argue that General Star's motion is premature, because neither party has answered the complaint and both have pending 12(b) motions before the court. (Def. Adams's & AVC's Resp. to Pl.'s Mot. for Judgment on the Pleadings [31], hereinafter "Def. Adams's Resp.," at 3; Def. Conner's Resp at 2.)

Although Defendants may technically be correct, the court is willing to entertain General Star's 12(c) motion, in light of the fact that it presents a pure question of law, and that each Defendant has already responded to the motion on its merits. As Conner himself admits, his 12(b)(6) motion to dismiss "adequately dealt" with what he deems the "substantive failings of

6

[Plaintiff's] motion." (Def. Conner's Resp. at 1.) While the Adams Defendants do not address the 12(c) motion in their own 12(b)(7) filing, they did speak, albeit briefly, to the merits of Plaintiff's motion in their response brief [31]. Because each defendant has had the opportunity to reply to the substance of General Star's motion for judgment on the pleadings, the court is prepared to address it on the merits. Defendants are invited, however, to seek reconsideration of the ruling here if the court's procedural decision to address the merits of this motion resulted in substantive prejudice to Defendants' arguments.

### B. Judgment on the Pleadings

Having addressed Defendants' procedural objection, the court now turns to the merits of General Star's motion. A Rule 12(c) motion is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Guise v. BWM Mortg., LLC*, 377 F.3d 795, 798 (7th Cir. 2004). In determining whether the complaint is sufficient, the court looks only to the pleadings, which include "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (internal citations omitted). A motion under Rule 12(c) is granted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support her claim for relief." *Buchanan-Moore*, 570 F.3d at 827.

Here, General Star seeks a declaratory judgment that it "does not have a duty to defend the AVC Defendants in connection with the [underlying *qui tam* suit] under the terms, conditions, and exclusions of the [Insurance Policy] and/or applicable law." (Pl.'s Mot. for J. on the Pleadings [25] ¶ 3.) Under Illinois[3] law, whether an insurer must defend the insured is a question of law resolved by comparing the allegations of the underlying complaint against the

---

[3] In this diversity suit, the court applies Illinois law because the parties agree that the claim is governed by Illinois law and "there is a reasonable relation between the dispute and the forum." *S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 672 (7th Cir. 2002).

7

insured to the language of the insurance policy. *Conn. Indem. Co. v. DER Travel Serv.*, 328 F.3d 347, 349 (7th Cir. 2003) (citing *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 166 Ill. 2d 520, 532, 655 N.E.2d 842, 847 (Ill. 1995); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 393, 620 N.E.2d 1073, 1077 (Ill. 1993)). "If the facts alleged in the underlying complaint fall within or even potentially within policy coverage, the insurer has a duty to defend its insured against the complaint." *U.S. Fire Ins. Co. v. Aetna Life & Cas.*, 291 Ill. App. 3d 991, 997, 684 N.E.2d 956, 960–961 (1st Dist. 1997) (citing *Lapham-Hickey*, 166 Ill. 2d at 532, 655 N.E.2d at 847). The insurer has no duty to defend, however, where it is "clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Conn. Indem.*, 328 F.3d at 349 (quoting *U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (Ill. 1991)).

Plaintiff argues that the underlying FCA suit, which alleges that AVC and Adams "knowingly caused to be submitted to the FDIC false records" (*Qui tam* complaint, Ex. B to Pl.'s Am. Compl., ¶ 96), "does not allege facts that fall or potentially fall within coverage" of the Insurance Policy. (Pl.'s Mot. for J. on the Pleadings ¶ 4.) As discussed above, the terms of the Insurance Policy obligate General Star to pay "Damages for Claims . . . arising out of any act, error, omission or Personal Injury in the rendering of or failure to render Professional Services by an Insured." (Insurance Policy, Ex. A to Pl.'s Am. Compl., at 3 (emphasis removed).) The policy further defines "claim" as "a demand for money, the filing of Suit or the institution of arbitration or mediation proceedings naming the Insured and alleging an act, error, omission or Personal Injury resulting from the rendering of or failure to render Professional Services." (*Id.* at 8–9.)

The parties' arguments regarding the scope of the coverage provided by the Insurance Policy focus almost exclusively on whether or not the holding of *Momence Meadows* is applicable here. In that case, a nursing center sought coverage from its insurer for an FCA

claim which alleged that the insured had provided substandard care to patients and then submitted false Medicare and Medicaid certifications attesting that it had provided quality services and care. *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 691 (7th Cir. 2009). The insurance policy in *Momence Meadows* "obligate[d] [the insurer] to defend any suit seeking damages 'because of' an 'injury' that is 'caused by a medical incident' arising out of the providing or withholding of various professional services." *Id.* at 694. The insured argued that the insurer in that case had a duty to defend because the allegations of the FCA complaint were based on supposed injuries arising out of substandard care. *Id.* The Seventh Circuit disagreed, concluding that "[t]he statutory damages [the insured] seeks result from those allegedly false filings, and not from any alleged bodily injury to the residents." *Id.* at 694–95. General Star argues that, as in *Momence Meadows*,[4] the "[l]iability of the [Adams Defendants] under the FCA is not based on any acts or omissions of the [Adams Defendants] in conducting appraisals . . . , but is rather premised solely on [their] alleged knowing involvement in false submissions to, and concealments from, the FDIC." (Pl.'s Mem. in Support of Mot. for J. on the Pleadings [26], hereinafter "Pl.'s Mem.," at 9.)

Defendants contend that counter that *Momence* is distinguishable because that case "does not deal with false statements generated as part of a professional service but, rather, false statements about professional services." (Def. Conner's Reply in Support of Mot. to Dismiss [33], hereinafter "Def. Conner's Reply," at 5.) The analysis in *Momence Meadows*, Defendants argue, "turned on the fact that proof of injury to patients was unnecessary to proof

---

[4] General Star also cites to an Illinois Appellate Court case with largely the same facts and outcome as *Momence Meadows*. (Pl.'s Mem. at 10–11 (citing *ISMIE Mut. Ins. Co. v. Michaelis Jackson and Assocs., LLC*, 397 Ill. App. 3d 964, 972, 921 N.E.2d 1156, 1164 (5th Dist. 2009) ("We conclude, as did the court in [*Momence Meadows*], that the proof required to sustain a claim for personal injuries, like a medical malpractice claim, is clearly distinct from the proof required for a claim for false filings of claims for medical reimbursement.").

9

of the misrepresentation to the Government" (*id.*), while the Adams Defendants' "professional service and its participation in the FCA violation are in essence the same conduct." (*Id.* at 7.)

*Momence Meadows* is instructive; but the case before this court appears to be governed more straightforwardly, by the terms of the Insurance Policy itself.[5] Specifically, Section VII of the policy lists a series of "exclusions" to General Star's obligation to pay for damages arising out of AVC's rendering of professional services. (Insurance Policy, Ex. A to Pl.'s Am. Compl., at 6–8.) Although the parties, curiously, make no mention of this language, it appears to address the issue directly:

> This Insurance Policy does not apply to Claims: Arising out of a dishonest, fraudulent, criminal or malicious act or omission, or intentional misrepresentation (including, but not limited to actual or alleged violations of state or federal anti-trust, price-fixing, restraint of trade or deceptive trade practice laws, rules or regulations) committed by, at the direction of, or with the knowledge of any Insured.

(*Id.* at 6 (emphasis removed).) This exclusion appears applicable to the underlying FCA allegations here. As discussed above, establishing civil liability under the FCA requires (1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false. 31 U.S.C. § 3729(a)(1). Thus, Conner's FCA claim against the Adams Defendants undoubtedly falls under the Insurance Policy's exception for dishonest acts, omissions, or intentional misrepresentations allegedly in violation of federal law. As it is "clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage," General Star has no duty to defend AVC in the underlying FCA suit. *Conn. Indem.*,

---

[5] Although the court need not reach the issue of whether *Momence Meadows* requires that General Star prevail on these motions, the alleged FCA violations here are, like the ones in *Momence Meadows,* distinct from any professional services rendered by AVC. The Adams Defendants' liability under the FCA, if any, will be based not on any damages arising out of their "professional services" (i.e., appraisals), but instead on their alleged knowing involvement in false submissions to, or concealments from, the FDIC.

328 F.3d at 349 (quoting *Wilkin Insulation Co.*, 144 Ill. 2d at 73, 578 N.E.2d at 930). Accordingly, General Star's motion for judgment on the pleadings is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for failure to join necessary parties [21] is denied, Conner's motion to dismiss [17] is denied, and General Star's motion for judgment on the pleadings [25] is granted. Any motion for reconsideration of this ruling on procedural grounds should be filed within 14 days.

ENTER:

Dated: February 6, 2014

_____
REBECCA R. PALLMEYER
United States District Judge